## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 18-25-1 |
| BRANDON GARCIA | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

On June 17, 2019, defendant Brandon Garcia pled guilty to Counts Five and Six of the Indictment charging him with one count of Hobbs Act robbery and aiding and abetting, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count Five), and one count of using, carrying, and brandishing a firearm during and in relation to a crime of violence, and aiding and abetting, in violation of 18 U.S.C. §§ 924(a)(1)(B)(i) and 2 (Count Six).  The defendant's guilty plea was tendered to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and the parties recommend that the following specific sentence is the appropriate disposition of this case: 177 months' imprisonment, 4 years' supervised release, a fine, if any, to be determined by the Court, and a $200 special assessment.  At the time of the change of plea hearing, the Court deferred acceptance of the parties' sentencing recommendation until after the Court's review of the Presentence Investigation Report.  The government respectfully requests that the Court accept the plea agreement and the sentence recommended by the parties.

## I.     LEGAL BACKGROUND

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence.  "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it."  *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

## II.    FACTUAL BACKGROUND

In pleading guilty to Counts Five and Six of the indictment on June 17, 2019, the defendant admitted robbing at gunpoint the Speedway gas station and convenience store at 1043 Lehigh Street in Allentown on March 28, 2017.  During the robbery, the defendant brandished a short-barreled rifle, using it to poke an employee as he told him to "get down." Additionally, pursuant to the plea agreement, the defendant admitted committing the two armed robberies that are the subject of Counts One through Four of the indictment.  Specifically, the March 23, 3017 robberies of the 7-11 convenience store at 1302 Hanover Street and the Sunoco gas station and

convenience store at 1602 South 4th Street, both in Allentown, Pennsylvania, during which he

brandished the same short-barreled rifle he did during the Speedway robbery.

## III.   SENTENCING CALCULATION

### A.   Statutory Maximum Sentence

The statutory maximum sentence for a violation of 18 U.S.C. § 1951(a), as charged in

Count Five is: 20 years' imprisonment; up to 3 years' supervised release; a $250,000 fine; and a

$100 special assessment.  The statutory maximum and mandatory minimum sentence for a

violation of 18 U.S.C. § 924(c), as charged in Count Six is: a maximum life imprisonment, a

mandatory term of 10 years' imprisonment consecutive to any other sentence of imprisonment;

up to 5 years' supervised release; a $250,000 fine; and a $100 special assessment.

Thus, the total maximum and mandatory minimum sentence is: life imprisonment; a

mandatory minimum term of 10 years' imprisonment consecutive to any other sentence

imposed; up to 5 years' supervised release; a $500,000 fine; and a $200 special assessment.

### B.   Sentencing Guidelines Calculation.

In the Presentence Investigation Report (PSR), the Probation Office calculates an

advisory guideline range of 183 to 198 months' imprisonment. (PSR ¶ 80.)  The government

agrees with this calculation.  The Probation Office reached this calculation as follows.

Pursuant to Sentencing Guidelines § 2B3.1, the defendant's offense level on Count Five

is 20. (PSR ¶ 40.)[1]  The defendant's base offense level on each of the two armed robbery

---

[1] Guidelines § 2B3.1(b)(2)(B) provides for an additional 6-level increase to a defendant's base offense level where, as here, a firearm is "otherwise used" during the commission of the offense.  However, as set forth in the PSR, per USSG § 2K2.4, Application Note 4, because this conduct is already accounted

3

counts stipulated to under the plea agreement is also 20.  (PSR ¶¶ 28, 34.)  The base offense

level on each stipulated count is increased by 6 levels because a firearm was "otherwise used"

during the course of the robbery.  (PSR ¶¶ 29, 35.)[2]  This results in an adjusted offense level of

26 as to both stipulated robbery counts.  (PSR ¶¶ 33, 39.)  Each of the three robbery counts

(Count Five and both stipulated counts) is a separate group (*see* § 3D1.2(d)).  Under USSG §

3D1.4, the two stipulated counts are each assigned one unit and Count One is assigned a half

unit, for a total of 2.5 units and a 3-level increase in the greater adjusted offense level of 26.

(PSR ¶¶ 46-48.)[3]  This results in a combined adjusted offense level for the three armed

robberies of 29.  (PSR ¶ 49.)

     The defendant receives a two-level reduction to his offense level for his acceptance of

responsibility (PSR ¶ 51) and an additional one-level reduction for the assistance he provided to

the government in the prosecution of his own misconduct by timely notifying authorities of his

intention to enter a guilty plea (PSR ¶ 52), under U.S.S.G. § 3E1.1(a) and (b), respectively.

This results in a total offense level of 26 for the three armed robberies.  (PSR ¶ 53.)

     The defendant does not have any criminal history points, and is therefore criminal

history category of I.  (PSR ¶ 56.)   His offense level of 26 cross-referenced with his criminal

---

for in the mandatory minimum consecutive sentence applicable to Count Two, it cannot be used to
increase his offense level on the substantive robbery count.  (PSR ¶ 41.)

[2] The limitation of USSG § 2K2.4, Application Note 4 does not apply to these charges because there is
no firearm count to parallel either of the two stipulated counts.

[3] The parties' initial calculation of the defendant's guidelines included a 5-level "brandishing"
enhancement under USSG §2B3.1(b)(2).  This resulted in an adjusted offense level of 25 instead of 26
and a total estimated guidelines range of 177 to 191 months' imprisonment.  However, the Probation
Office's application of the 6-level "otherwise used" enhancement is supported by the guidelines and
existing case law.

history category of I produces a Guidelines range of 63 to 78 months' imprisonment.  (PSR ¶ 80.)  Additionally, Count Six, charging using, carrying, and brandishing a short-barreled rifle during and in relation to a crime of violence, each carry a consecutive mandatory minimum of 120 months' imprisonment, which must be added to the guidelines range applicable to the robberies.  (PSR ¶¶ 27, 80.)  Thus, the effective guidelines range is 183 to 198 months' imprisonment, 120 months of which is mandatory.  (PSR ¶ 80.)

IV.    **GUILTY PLEA AGREEMENT**

The parties' C plea agreement includes an agreed, proposed sentence of 177 months' imprisonment, 4 years' supervised release, a fine, if any, to be determined by the Court, and a $200 special assessment.  The parties have submitted the agreement for the Court's review in light of the PSR and all of the circumstances of the case. The Court, of course, has the power pursuant to *United States v. Booker*, 543 U.S. 220 (2005), to impose a sentence above or below the advisory guideline range based on the 18 U.S.C. § 3553(a) factors.  The government respectfully urges the Court to exercise its discretion to accept the parties' agreement, which the parties entered into aware that the agreement, if accepted, would result in a sentence slightly below the effective guidelines range.  For the reasons explained below, the government submits that the agreed sentence is reasonable and appropriate when considered in light of all the circumstances of the case and the factors Congress has directed be considered at sentencing.

At sentencing, the Court may consider and assign appropriate weight to any permissible factor to impose a sentence in light of the factors set forth in 18 U.S.C. § 3553(a).  "For a sentence to be substantively reasonable, a district court must apply the § 3553(a) factors reasonably to the circumstances of the case."  *United States v. Lessner*, 498 F.3d 185, 204 (3d

Cir. 2007).  Appellate review is deferential and the inquiry turns on "whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." *United States v. Doe*, 617 F.3d 766, 769-70 (3d Cir. 2010) (citations omitted).  *See also United States v. Howe*, 543 F.3d 128, 138 (3d Cir. 2008) (a defendant's remorse can warrant a downward variance under § 3553(a) regardless of whether the defendant previously accepted responsibility); *United States v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006) (A factor that is discouraged or forbidden under the guidelines can be considered in weighing statutory factors).

Here, the parties respectfully ask the Court to accept the parties' plea agreement. Ninety-seven percent of all federal convictions are the result of guilty pleas, and plea agreements are central to the administration of criminal justice.  *Missouri v. Frye*, 132 S. Ct. 1399, 1407-08 (2012) ("The potential to conserve valuable prosecutorial resources and for defendants to admit their crimes and receive more favorable terms at sentencing means that a plea agreement can benefit both parties.").  Guilty pleas finally resolve criminal cases without trials and the vagaries and uncertainties of post-trial, sentencing, and direct and collateral appellate litigation.  As the Supreme Court has recognized, finality is an important attribute of criminal judgments and one "essential to the operation of our criminal justice system."  *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion) (superseded by statute on other grounds); *see United States v. Frady*, 456 U.S. 152, 166 (1982) ("[T]he Federal Government, no less than the States, has an interest in the finality of its criminal judgments.").

The government enters into plea agreements after careful and thorough consideration of all the circumstances of the case, including, as pertinent, the rights and interests of victims and

witnesses; the statutory maximum and mandatory minimum penalties; the advisory Sentencing Guidelines range as estimated by the government; the § 3553 factors; litigation risks; the benefits to the government, the victims, and witnesses; the justice system's interest in a final and certain result; the costs and uncertainties of litigating post-*Booker* Sentencing Guidelines and other sentencing issues, and of direct and collateral appeals; the views of the investigating agency in light of all the circumstances; and any considerations advanced by the defense.  In its plea negotiations, the government strives to further its interests while taking objective account of the interests of the public and the justice system

This Office's guilty plea agreement explicitly acknowledges the discretion of the district court to accept or reject any such plea that is tendered to it.  These agreements bind the parties but not the exercise of the Court's discretion.  On reflection, after review of the PSR, the government remains not merely bound but confident in its agreement with the defendant and his counsel.  The government respectfully urges the Court to accept it.

Most importantly, the plea agreement provides the certainty of conviction.  No matter the case, trials are ultimately decided by jurors, who are reliably human and sometimes are unable to reach verdicts in cases that are clear to the advocates.  And juries' verdicts, when and if reached; the conduct of counsel for the parties; and the pre-trial, trial, post-trial, and sentencing rulings of the Court are subject to multiple layers of review after a sentence has been imposed.  In a case as serious as this one, the government has a vital interest in the certainty of conviction that only a plea agreement provides.  The victims, of course, share this interest as poignantly as they do urgently.  The plea agreement reached by the parties promotes the interest

of justice, because it guarantees conviction, finality, and a very substantial prison sentence for this defendant.

## V.   <u>OTHER SENTENCING FACTORS</u>

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the sentence agreed upon is an appropriate sentence in this case.

The Supreme Court has declared:  "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).  "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range."  *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion) (ellipsis in original)).  "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences."  *Peugh*, 133 S. Ct. at 2084.  "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing."  *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

1.      **The Nature and Circumstances of the Offense And The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

The crimes here are serious as is reflected by the mandatory minimum term of ten years' imprisonment consecutive to any other term of imprisonment imposed, which is applicable to Count Six.  The defendant robbed three businesses within a one-week period at a time when he was wanted in New Jersey in connection with an unrelated armed robbery.  In each of the robberies at issue in this case, the defendant used a short-barreled rifle to intimidate his victims and during the Speedway robbery, he actually poked one employee with the gun itself.  The defendant's conduct not only shows his danger to community the fact he was a fugitive at the time he committed the robberies suggests a lack of respect for the law.  Thus, a significant period of incarceration is necessary not only to reflect the seriousness of the defendant's crime and provide just punishment for the offense, but also to promote respect for the law.

2.      **History and Characteristics of the Defendant**

The defendant was approximately two months shy of his nineteenth birthday at the time he committed and was arrested on the instant charges, and this case will be his first conviction. However, it is especially concerning that his first conviction involves such serious conduct and the November 2016 armed robbery for which he was wanted in New Jersey suggests a continuing a pattern of violence.  A significant sentence is necessary to account for this fact.

9

### 3. <u>The Need to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant</u>

As mentioned, the defendant committed three armed robberies in less than a week and at a time when he was wanted in connection with an unrelated robbery in New Jersey. A substantial period of incarnation is necessary to protect the public from further crimes of the defendant. Additionally, both specific and general deterrence are especially important in this case. Given that this is the defendant's first adult arrest and conviction, the sentence imposed will have a lasting impact on the defendant's future behavior. While the sentence should not be greater than necessary to further the goals of sentencing, it must be sufficient to deter the defendant from committing future crimes. A substantial sentence is also necessary to send a message to others within the defendant's community that the commission of violent crimes, particularly those involving firearms, will result in significant periods of incarceration.

### 4. <u>The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner</u>

The defendant, who did not obtain his high school diploma or educational equivalent, could benefit from educational programs offered by the Bureau of Prisons. Additionally, although the defendant stated that he was not interested in receiving substance abuse treatment, given that his reported daily use of marijuana for the approximately five years prior to his arrest, he may also benefit from substance abuse treatment programs offered during any period of incarceration. However, there is no need in this case to adjust the sentence to provide educational training or medical care.

10

5.      **The Guidelines and Policy Statements Issued by the Sentencing Commission**

The Sentencing Guidelines stand as another consideration in this case.   The Guidelines

serve the vital goal of uniformity and fairness in sentencing.  While, to be sure, "[i]n accord

with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among

several courts must consider in determining an appropriate sentence," *Kimbrough v. United*

*States*, 552 U.S. 85, 90 (2007), it remains the case that "the Commission fills an important

institutional role: It has the capacity courts lack to 'base its determinations on empirical data

and national experience, guided by a professional staff with appropriate expertise,'" *id.* at 108-

09 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J.,

concurring)).

Thus, the Supreme Court stated:  "We have accordingly recognized that, in the ordinary

case, the Commission's recommendation of a sentencing range will 'reflect a rough

approximation of sentences that might achieve § 3553(a)'s objectives.'"  *Kimbrough*, 552 U.S.

at 109 (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).  Here, the parties'

recommendation of a sentence of imprisonment that is six months below the low-end of the

applicable guidelines range.  This small variance is warranted not simply by the fact that the

defendant has no criminal history points as this is arguably already accounted for in the

defendant's criminal history category, but by the defendant's lack of any prior arrests or

convictions.

11

6.     **The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

This Section 3553(a) factor is primarily designed to ensure sentencing consistency among similarly situated defendants across the entire nation. *See United States v. Parker*, 462 F.3d 273 (3d Cir. 2006); *United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009) ("Although it is true that § 3553(a)(6) requires a sentencing judge to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" that "factor 'concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between codefendants.'").  Here, the sentence is only slightly below the applicable guidelines range. This does not create an unwarranted sentencing disparity and instead is justified by the defendant's lack of a criminal history, age at the time of the offenses and the short time period within which he committed his crimes.

7.     **The Need to Provide Restitution to Any Victims of the Offense**

Restitution is mandatory in this case under 18 U.S.C. § 3663A.  The amount calculated by the probation department is greater than what the parties agreed to.  The Presentence Investigation Report calculates the total amount of restitution to be $1,380.  According to the PSR, this amount is due to the following victims in the following amounts: 1) 7-11, $540; 2) Sunoco, $480; and 3) Speedway, $360. (PSR ¶¶ 91-93.)  Under the plea agreement, the parties

acknowledged a total restitution about of $560—the total cash amount stolen during the three robberies: $260 due to the 7-11; $200 due to the Sunoco, and $80 due to Speedway.

**VI.**     **CONCLUSION**

Under all of the circumstances of this case, the sentence recommended by the parties is "sufficient, but not greater than necessary . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3353(a)(2). The recommended sentence also will "afford adequate deterrence . . . protect the public . . . and . . . provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.*

The government, therefore, respectfully urges the Court to accept the plea agreement and the parties' sentencing recommendation and to impose a sentence of 177 months' imprisonment.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

  /s Sarah Damiani
SARAH DAMIANI
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have caused to be served a true and correct copy of the

Government's Sentencing Memorandum on this date, by e-mail, to the following:


Kathryn E. Roberts, Esquire
527 Hamilton Street
Allentown, Pa 18101
KathrynRoberts_Esquire@yahoo.com



  /s Sarah Damiani
SARAH DAMIANI
Assistant United States Attorney


DATE:   December 27, 2019